## NYE v BOARD OF CO COMMISSIONERS

Ohio Probate Court, Summit Co

Decided Aug 5, 1937

### OPINION

By MAY, J.

This case came on for hearing before James B. Danasher, special master commissioner, heretofore appointed by this court to hear said cause, on the petition on appeal from an order of the board of county commissioners of Summit County, Ohio, and the demurrer filed by the county commissioners; and the interested parties

being before the court, said master commissioner, now files his said report herein and finds that plainiff's claim for damages arises out of killing of sheep by dogs not owned by her, nor harbored by her; the statute invoked being §5840 et seq GC.

The demurrer of the county commissioners is based on the theory that the statutes invoked are in derogation of the common law, and that a strict construction of them would require a sustaining of said demurrer.

It should be noted that the funds to be used with which to pay the owner of horses, sheep, cattle, swine, mules or goats, are not derived from general taxation. Every owner of a dog or of a dog kennel is required to pay into this fund. Payment of claim is contingent on this fund only.

It should also be noticed that the owner or harborer of a dog, either registered or unregistered, and irrespective of negligence or of known or unknown viciousness on the part of the dog, is liable for damage done to either persons or animals. See §5838, GC.

In order to recover for any of the enumerated animals, as against the dog and kennel fund, certain procedure has been prescribed by the General Assembly, which is found in §5840 et seq, GC. Among these procedural steps are the following:

First: The claimant must notify a county commissioner in person or by registered mail, within forty-eight (48) hours after such loss or injury has been discovered.

Second: The claimant must present to the township trustees, in which such loss or injury occurred, within sixty (60) days, a detailed statement of such loss, supported by claimant's affidavit.

Third: A duplicate of such statement must be presented to the county commissioners.

Fourth: Such detailed statements must be filed with in sixty (60) days after the discovery of such loss or injury.

Fifth: The statement, among other things, must contain a description of the kind, grade, quality and value of the animals injured or destroyed, and the place where such loss or injury occurred; and this detailed statement of loss or injury must be supported by the testimony of at least two freeholders who viewed the results of the killing or injury, and who can testify thereto.

See §5840, GC.

It is contemplated that the trustees shall thereupon hear the proof in respect thereto. It might be well to include within the detailed statement the following facts, which the claimant must show to the satisfaction of the trustees, before he is entitled to an allowance at the hands of the trustees:

First: That the damage complained of was not caused in whole or in part by a dog kept or harbored on the owner's premises; or

Second: If so kept or harbored on the owner's premises, that the dogs were registered and that they were killed within forty-eight (48) hours from the time of the discovery of the fact that the damage was done by a dog or dogs kept or harbored on the premises.

If no formal hearing is had and if the two facts above outlined are included within the detailed statement, supported by claimant's affidavit, such proof would be sufficient to permit the trustees to make an award without formal hearing.

Sec 5844, GC requires the trustees to endorse the amount allowed on a claim and then to transmit their findings with the testimony so taken to the county commissioners in care of the county auditor, and it apparently contemplates that the auditor shall enter each claim so reported by the trustees upon a book kept for that purpose, and in the order of their being received by the county auditor.

The attorney general has ruled that if no allowance at all is made to the claimant by the trustees, there would be no duty to transmit their findings and the testimony to the auditor and to the commissioners for any other further action. In this opinion we cannot ▆▆▆▆▆▆ ▆ agree, for if nothing is allowed, surely the trustees are required to make a record of that fact on a claim duly presented to them. The statute should be liberally construed and within the language "amount allowed on each claim" would surely be included the endorsement of no amount allowed.

Under §5846, GC, the commissioners are required to hear these claims which have been submitted, at their next regular meeting. They may hear additional testimony or receive additional affidavits in regard thereto. The power of the commissioners is rather large. They may allow the amount determined by the ▆▆▆▆▆▆ ▆ trustees, or they may reduce the amount, or they may add to the amount, as they may find to be just, to be paid out of the fund created by the registration of dogs and kennels and known as "The Dog & Kennel Fund."

We are of the opinion that if the trustees have made an award, the commissioners may wholly disallow the same, although the language does not so state, but having the power to increase or diminish, certainly that would include the power to totally deny, as we have observed in respect to the total disallowance of the claim by the trustees.

Under §5843, GC, if the claimant is dissatisfied with the allowance made by the commissioners, he may within thirty (30) days appeal to the Probate Court, in which he files a petition setting out the facts in the case as contended for by him. In this action the county commissoners are parties defendant.

Sec 5849, GC, among other things provides that "The Probate Court shall hear such proceedings as in equity and determine the value" of the animals killed or injured. The Probate Court thereupon certifies the amount back to the commissioners, who are to order the amount paid out of the Dog & Kennel Fund.

From what has been pointed out above, it is apparent that three successive steps are involved in such case:

First: The proceeding before the township trustees;

Second: The proceeding before the commissioners;

Third: The proceeding before the Probate Court.

It would rather seem that the first two steps are jurisdictional, and must be substantially complied with before the Probate Court may entertain a petition by the claimant. However, on the converse, it would seem that the General Assembly contemplated that ultimately the claimant should have a judicial review in the Probate Court, after having exhausted what may be termed as "Administrative remedies," and this irrespective of what may have been done with his claim by the trustees or by the commissioners.

In respect to the question of the enumerated animals being either injured or killed within the corporate limits of a village or city, the following may be observed:

First: §5840 et seq., GC are laws of a general nature. Being laws of a general nature, Article II, §26 of the Constitution is applicable, which said section is as follows:

"All laws of a general nature shall have a uniform operation throughout the state."

Second: If the above sections are laws of a general nature and they do not apply equally to claimants both within and without corporate limits, then the above sections clearly are wholly unconstitutional, because of their lack of uniform operation, as required by the constitution.

Now it should be observed that there is nothing in these sections which states that they shall be applicable only to the enumerated animals if injured or killed within townships, as distinguished from incorporated villages or cities. These sections in one form or another have been on the statute books for many years, and it is rather late to challenge their constitutionality. The court should not challenge their constitutionality if they can be reconciled with the constitutional provision hereinabove quoted. Of course, the court must take judicial notice of the fact that townships existed first. That an after-created village or city is composed either of a part of a township, an entire township, or a number or parts of a number of townships. §3512, GC, provides in part as follows:

"When the corporate limits of a city or village become identical with those of a township, all townhip offices shall be abolished, and the duties thereof shall thereafter be performed by the corresponding officers of the city or village * * *."

Judicial notice will be taken of the fact that on April 9, 1934, the county commissioners passed a resolution granting a request of the council of the village of Macedonia, changing the boundaries of the townships of Macedonia and Twinsburg, "so that the township of Macedonia shall include territory to the end, that the territory within the village of Macedonia will be identical with the territory within the township of Macedonia."

We may assume that if any of the enumerated animals should be either injured or killed within the corporate limits of a city or village, which occupies but a part of a pre-existing township, there would still be the duty on the part of the owner to present his claim to the trustees of the township in which the city or village is located.

We may assume further, in view of the language of the above quoted section of the General Code, that if the subsequently created village or city occupies the entire township, then the claimant should pre-

sent his claim to the officers of the city or village, which would be the city or village council. We state this for the reason that if it should be determined that the owners of any of the enumerated animals, who might happen to live and have their animals within a village or city, whose lines might be identical with those of a township, were denied participation in the Dog & Kennel Fund, while another claimant in the immediately adjoining township, under the same facts and circumstances, would be entitled to participation, then clearly there would result such a lack of uniformity of operation, as to cause the entire statute to fall in view of the constitutional requirement hereinabove referred to.

It is the duty of the court to avoid such a conflict, if possible, and from the law and the facts before the court, the conflict can be avoided and the act sustained, and this without doing violence to any of the statutory provisions hereinabove referred to.

In tracing the history of the statutes involved, it is evident that the Dog & Kennel Fund was set up for the primary purpose of paying animal claims. Originally the township trustees were not involved. The present statute, §5840 GC was in its original form R S. 4215 (74 O. L. 177), the same being passed May 5, 1877. Said statute covered only the killing and injury of sheep and dogs, and there was no reference to township trustees, the claims being filed directly with the county commissioners and heard and determined by them alone. As the counties grew, it is only reasonable to assume that part of the details of the fact-finding group were delegated to the trustees.

It is a well known fact that in many Ohio counties the population has increased to the point where a substantial portion of the entire county is made up of incorporated villages and cities. This increase in population causes an increase in the number of dogs, consequently the source of revenue is greater so that a gross injustice would be wrought if. despite the source of revenue, persons in municipalities would have no relief in such cases. It is also evident that at the time of the enactment of the statutes providing for payment for animal claims, rural sections were not embraced within corporate limits to the extent they are at present.

It is therefore, the conclusion of the said master commissioner that construing the statutes involved, in the light of their real intent and purpose, the demurrer herein filed should be overruled.

And the court having examined the report of said master commissioner, and having duly considered the findings and recommendations therein made, does now approve such report and hereby overrules said demurrer. .

Exceptions are hereby allowed the defendants, the commissioners of Summit County.